

> Application **DENIED**. Defendants represent that they have produced a version of the file in question with metadata intact. Requiring further efforts to locate other or earlier versions of the file with additional metadata would not be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).
>
> Date: November 13, 2024
> New York, New York
>
> _Dale E. Ho_
> Dale E. Ho
> United States District Judge

<u>*Via ECF*</u>
Hon. Dale E. Ho, U.S.D.J.
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

  Re: ***Manungo v. Centers Health Care IPA, LLC et al***
     **Case Number: 1:24-cv-01938-DEH**

<u>**Letter Motion Seeking Compel Production**</u>

Your Honor:

  This firm represents the plaintiff Beaulah Manungo ("Plaintiff") in the above-referenced matter. This letter is being submitted in accordance with Your Honor's Individual Rules of Practice (the "Individual Rules"), namely section 4(k), seeking to compel production of a certain requested document. Defendants oppose this request; their position is detailed below.

  By way of background, this is a case involving a woman who worked as a CNA at a center for rehabilitation and nursing in Cooperstown, NY, which houses senior adults who are unable to care for themselves. Plaintiff began working in January 2023. On 2/21/2023, Plaintiff witnessed what she believed to be one of the doctors at the facility sexually assaulting a resident. She reported what she saw to her immediate supervisor immediately after witnessing this and was terminated from employment on 3/3/2024. These facts are undisputed.

  According to Defendants, Plaintiff violated company policy in the manner in which she reported what she had observed and that was the reason for her termination. Specifically, Defendants contend it was incumbent for Plaintiff to notify her supervisor *as well as* other members of Defendants' administration. The documents relating to the protocol for reporting abuse produced in discovery stated otherwise, in that, reporting suspected abuse to her supervisor alone satisfied her obligations.

  On 8/16/2024, the Court extended the deadline for the completion of fact discovery to 9/29/2024. Dkt. No. 27. On 9/272024, two days before the deadline of the then-discovery deadline, Defendants produced a purported training document which was a Power Point slide show entitled "Prevention of Abuse Neglect and Exploitation." This document included 31 slides and notably, one slide regarded purported protocol for reporting resident abuse. This particular slide was significant in that it materially departed from the documents previously supplied in discovery and stated that a CNA should report suspected abuse to one's supervisor, the director

of nursing, the administrator, *and* the director of social work. This was the first time a document showing this was produced despite discovery commencing in April 2024.

Following this, Plaintiff's counsel immediately hired an expert—to wit, a company called Capsicum Group, LLC ("Capsicum")—to analyze, inter alia, the metadata of this document. (The belief was, and still is, that this document with the adjusted protocol for reporting was created *after* the abuse incident, Plaintiff's termination and/ or around the time the DOH was investigating Defendants.) It was learned by Capsicum that the Power Point file produced on 9/27/2024 had corrupted metadata and that the information as to creation/ editing could not be discerned.

The parties thereafter conferred on this issue and on 10/8/2024, Plaintiff's counsel (Mr. Wolnowski) asked, per his expert's directive, that Defendants either image the file from the original source (i.e., the machine upon which the document was created) or send the Power Point file via a Zip file. On 10/11/2024, Defendants sent a Power Point file via a Zip file. Mr. Wolnowski provided this to his expert, and upon analysis, the expert advised that he was having the same issues and that he wasn't able to analyze the metadata. As such, the Power Point would need to be imaged from the original source, which will, according to him (the expert), "allow [him] to understand the source of where [the file] exists and the metadata about the file system and internal embedded metadata."

On 11/1/2024, Mr. Wolnowski advised Defendants' attorneys of record that he would be needing a copy of the Power Point file from the original source and stated, "I believe it can be saved onto a Thumb drive from the hard drive of the original source computer. Is this something you are able/ willing to provide?" Defendants did not respond until 11/5/2024 and advised, materially, that they "do not have the capabilities to provide [Plaintiff] with anything beyond [what they already had provided]."

A meet-and-confer call ensued on 11/6/2024 between Mr. Wolnowski and Ms. Windholz. When Mr. Wolnowski asked Ms. Windholz why they weren't able to produce the original source document, she originally replied, they were "just not able to." When Mr. Wolnowski pressed on this, Ms. Windholz said she "wouldn't even know who to ask." Mr. Wolnowski then asked if Mr. Deutsch had inquired into this (he is the other attorney of record, and seemingly the person taking the lead on this issue) and she couldn't give a response. When Mr. Wolnowski again asked as to his efforts, Ms. Windholz became upset and abruptly hung up on Mr. Wolnowski.

Based on the foregoing, Plaintiff seeks Defendants to produce the Power Point file from the original source for analysis by Plaintiff's expert. It was clear on the meet-and-confer call that despite Mr. Wolnowski raising the issue as to retrieving the document from the original source for nearly a month, neither attorney of Defendants has so much as even asked their client about this. This document (as well as its metadata) is clearly relevant and should be produced.

In compliance with section 4(k) of Your Honor's Individual Rules of Practice:

(1) the date and time of each conference conducted pursuant to Section 4(k)(i) above;

➔ 11/6/2024 at 2:00 PM ET.

(2) the adversary's position as to each issue being raised; and

➔ Defendants' position is that they're "just not able to," and "wouldn't even know who to ask" as to obtaining this document.

(3) that the moving party informed the adversary during the last conference that the moving party believed the parties to be at an impasse and that the moving party would be requesting a conference with the Court.

➔ Plaintiff's counsel so advised on 11/6/2024 on the phone.

Plaintiff and counsel thank the Court for its attention to this matter.

Respectfully submitted,

_____
Casey Wolnowski, Esq.
*Attorney for Plaintiff*

cc:   Defendants' counsel of record (*via ECF*)