UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BEAULAH MANUNGO,

                              Plaintiff,

              v.

CENTERS HEALTH CARE IPA, LLC, and
OTSEGO SNF OPERATIONS ASSOC. LLC
d/b/a COOPERSTOWN CENTER FOR
REHABILITATION & NURSING,

                            Defendants.

---

24 Civ. 1938 (DEH)

**MEMORANDUM
OPINION AND ORDER**

DALE E. HO, United States District Judge:

Plaintiff Beaulah Manungo was an employee at the Cooperstown Center for Rehabilitation & Nursing ("Cooperstown Center"), a senior living facility in Cooperstown, New York. During a shift, she witnessed a doctor at the facility sexually assaulting a resident. She claims that she was fired for reporting the assault, in violation of two New York whistleblower statutes, New York Labor Law § 740 ("NYLL") ("Section 740" or "§740") and New York Labor Law § 741 ("Section 741" or "§ 741"). Defendants Centers Health Care IPA, LLC, and Otsego SNF Operations Associates LLC d/b/a Cooperstown Center for Rehabilitation & Nursing (collectively, "Defendants") move for summary judgment, contending that the undisputed facts demonstrate that Plaintiff was not fired in retaliation for reporting the sexual assault of a resident, but rather for her failure to do so. Plaintiff responds by arguing that Defendants' stated reasons for the firing are pretextual.

The Court concludes that Defendants are entitled to judgment as a matter of law. As explained herein, there no genuine dispute of fact that Defendants' reasons for firing Plaintiff— namely, her failure to adequately report the sexual assault in a timely manner and her other

inappropriate conduct shortly after the assault—were legitimate, rather than pretextual bases for retaliatory action. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED**.

**BACKGROUND[1]**

Plaintiff Beaulah Manungo ("Plaintiff") was hired to work at Cooperstown Center as a Certified Nursing Assistant ("CNA"). Def's' 56.1 Statement of Uncontested Facts ¶ 1, ECF No. 42 ("Defs.' 56.1 Stmnt."). Plaintiff had worked as a CNA at various places for more than twenty years. *Id.* As a CNA at Cooperstown Center, Plaintiff's primary job duties included, but were not limited to, providing personal care to residents, which includes assisting residents with, among other things, bathing, grooming, toileting, dressing, feeding, cleaning, and preparing for and receiving medical care, as well as monitoring and documenting the care provided. *Id.* ¶ 2. While the parties dispute the full scope of Plaintiff's supervisors, Plaintiff, at minimum, reported to the charge nurse on duty during each shift. *Id.* ¶ 3.

During Plaintiff's shift on February 21, 2023, Plaintiff was responsible for the care of, among others, long-term care resident M.F. *Id.* ¶ 5. At or around 7:30 p.m. on February 21, 2023, Plaintiff entered M. F.'s room and observed a man with his pants down and his buttocks exposed, leaning over M. F., with his hands around her chest area. *Id.* ¶ 6. Plaintiff recognized that the man was Dr. Bryan Venerus, a doctor at Cooperstown Center. *Id.* ¶ 7. When Dr. Venerus saw Plaintiff, he pulled his pants up and left the room. *Id.* ¶ 8. No one other than Plaintiff witnessed the assault. *Id.* ¶ 12.

Immediately after Plaintiff left M. F.'s room, she saw the Charge Nurse on her unit, Ashanti Smothers, in the hallway. *Id.* ¶ 13. Plaintiff told Smothers what she had witnessed in M. F.'s

---

[1] The facts herein are taken directly from the Parties' Rule 56.1 statements and are undisputed unless stated otherwise.

2

room.  *Id.* ¶ 14.  The Parties dispute whether Smothers indicated that she would tell anyone else what Plaintiff had reported.  Plaintiff left work for the day without telling anyone else about the assault, such as the Administrator.  *Id.* ¶ 16; Pl.'s 56.1 Statement of Uncontested Facts ¶ 101, ECF No. 46 ("Pl.'s 56.1 Stmnt.").  This is despite her employer's abuse policy that directs employees to:

> 1. Notify the Shift Supervisor / Charge Nurse/ Manager immediately if suspected abuse, neglect, mistreatment or misappropriation of property occurs.
>
> 2. Report the incident to the Administrator and Director of Nursing. The Administrator and Director of Nursing or designee will report to the Regional Clinical Manager and RDO.
>
> 3. Notify the local law enforcement and appropriate State Agency(s) immediately (no later than 2 hours after allegation / identification of allegation) by Agency's designated process after identification of alleged/suspected incident. Initiate process according to the Elder Justice Act and State-specific regulations.
>
> 4. Notify the legal guardian, spouse, or responsible family members/ significant other of the alleged or suspected abuse, neglect, mistreatment, and/ or misappropriation of property immediately.
>
> 5. Notify the Physician immediately.
>
> 6. Report results of investigation to the proper authorities as required by State law. Failure to report to required Regulatory Agencies in the capacity of a facility administrator could result in termination.
>
> 7. Once an allegation of abuse has been made, the supervisor who initially received the report must inform the Administrator/Director of Nursing immediately and initiate gathering requested information. An investigation MUST be directed by the Administrator or designee immediately. If a crime is suspected, the Elder Justice Hotline must be notified.

*Id.* ¶ 91.  Plaintiff testified that her understanding was that, as a CNA, she was responsible only for the first step of this process—i.e., reporting to a charging nurse—and that she was never told that she could escalate beyond that. *Id.* ¶¶ 96-97.  Defendants' 30(b)(6) witness testified, however, that the second step of the reporting process—i.e., reporting to the Administrator and Director of Nursing—is not specific to any particular position.  *Id.* ¶ 94.

3

The following day, February 22, 2023, Plaintiff returned to work for a 16-hour shift. Defs.' 56.1 Stmnt. ¶ 17. There, she saw Dr. Venerus working in the facility. *Id.* ¶ 18. Plaintiff was surprised by and wondered why Dr. Venerus was at work if the assault had been reported. *Id.* ¶ 19. Plaintiff still did not tell anyone else about nor discuss the assault. *Id.* ¶ 20. Nor did she do so the following day. *Id.* ¶ 21. Plaintiff continued to work shifts as normal and never raised the issue to anyone at Cooperstown again. *Id.* ¶ 27.

On February 25, 2023, two LPNs at Cooperstown Center—Bonnie McBride and Geoffrey Perkins—learned about the assault independently. *Id.* ¶ 28. The same day, they contacted the Otsego County Sheriff's Department ("OCSD"). *Id.* ¶ 29. They did not report the assault to anyone at Cooperstown Center until February 26, 2023, the following day. *Id.* ¶ 30.

On February 26, 2023, after Cooperstown Center leadership learned about the assault, Plaintiff was called in to give the first of two statements to Cooperstown Center. *Id.* ¶ 31. This statement, which Plaintiff wrote herself, does not indicate that Smothers told Plaintiff that Smothers would report the assault to anyone else at Cooperstown Center, the New York State Department of Health ("DOH") or the police. *Id.* ¶ 32. Plaintiff also wrote that on the day after the assault, M. F. "told [Plaintiff] that [Dr. Venerus] wants to thank [Plaintiff] for not saying anything." *Id.* ¶ 33.

On February 27, 2023, Plaintiff gave her second statement to Cooperstown Center regarding the assault. *Id.* ¶ 34. This statement was given orally to two employees, including the Administrator of Cooperstown Center at that time, Levi Lazar, who typed Plaintiff's statement. *Id.* Plaintiff's February 27, 2023 statement again does not indicate that Smothers told Plaintiff that Smothers would share Plaintiff's report of the assault with anyone else at Cooperstown Center, DOH or the police. *Id.* ¶ 35.

4

Separate from her statements, Plaintiff had also secretly recorded a conversation with M.F. discussing the assault shortly after it occurred. *Id.* ¶ 9. According to Plaintiff, she did so to protect M.F. *Id.* ¶ 11. Plaintiff never told anyone at Cooperstown Center that she had a recording of a conversation between herself and M. F. about the assault. *Id.* ¶ 37. On the recording, Plaintiff is heard laughing about the assault. *Id.* ¶ 10.

Cooperstown Center also interviewed the Charge Nurse on duty, Ashanti Smothers. In her statement, Smothers wrote that she saw Plaintiff "praise dancing" because Plaintiff thought she would be able to leverage her knowledge of the assault such that she "would not have to work anymore after her eyes seen [sic] what they seen [sic]." *Id.* ¶ 38. Smothers wrote that Plaintiff told her that she saw Dr. Venerus sexually assaulting M.F. *Id.* Smothers claims that she instructed Plaintiff to "go upstairs" and report Dr. Venerus if she wished to report the assault. *Id.* ¶ 39. Smothers never reported what Plaintiff told her regarding the assault to Cooperstown Center leadership. *Id.* ¶ 42.

On February 26, 2023, Cooperstown Center leadership found out about the assault and reported it to relevant authorities. *Id.* ¶ 43. Dr. Venerus was immediately removed from Cooperstown Center and suspended indefinitely from work pending the outcome of an investigation. *Id.* ¶ 44. On the same day, Plaintiff gave oral statements regarding the assault to investigators from OCSD and DOH. *Id.* ¶ 45. Plaintiff did not tell either OCSD or DOH that she had a recording of a conversation between herself and M. F. about the assault. *Id.* ¶ 46.

On March 3, 2023, Cooperstown Center terminated Plaintiff's employment. *Id.* ¶ 47. Plaintiff believes her employment was terminated to protect Dr. Venerus. *Id.* ¶ 48. Plaintiff felt that with her termination, Defendants were "trying to sweep everything under the rug." Pl.'s 56.1 Stmnt. ¶ 64. On March 6, 2023, Plaintiff emailed Erin Shehu, the employee at the staffing agency who placed Plaintiff at Cooperstown Center, and wrote that Plaintiff was told that her employment

was terminated because she "did not escalate the matter to the higher up after seeing the charge nurse had not reported the matter to [Cooperstown Center]" and because she was "seen dancing and celebrating saying [she] would never have to work again." Defs.' 56.1 Stmnt. ¶ 49. Cooperstown Center also terminated the employment of Smothers and two other employees for the stated reason of failure to timely and appropriately report the assault. *Id*. ¶ 50.

Lastly, in her filings related to this motion, Plaintiff alleges that the firing of these several employees was part of a ruse to protect the facility from future punishment by the state licensing authority and Medicare. Pl.'s 56.1 Stmnt. ¶ 141-154. Plaintiff claims that her firing was part of a coordinated scheme to prevent further action from DOH investigators, possibly even at DOH's behest. *Id*. Plaintiff also testified at her deposition that Lazar attempted to get Plaintiff to change her story and to deny that any abuse occurred. *Id*. ¶ 134. However, Plaintiff did not make such claims in any previous statement. *See* Reply Affirmation of Diane Windholz in Further Support of Defs.' Motion ("Windholz Reply Aff.") at Ex. K, P00044, ECF Nos. 49, 51.

Plaintiff filed this suit on March 14, 2024, alleging that her termination was unlawful retaliation for her decision to report Dr. Venerus's sexual assault of M.F. *See* Compl. ECF No. 1. She brought two claims for violations of Sections 740 and 741 of the NYLL, two whistleblower provisions of state law. *Id*. At the close of discovery, Defendants moved for summary judgment, arguing that Plaintiff has failed to establish a dispute of material fact regarding whether Plaintiff was retaliated against for her report of Dr. Venerus. ECF No. 41.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*

*Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). [2] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236. But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586. The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

---

[2] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

"[I]n the rare circumstance where the plaintiff relies almost exclusively on her own testimony, much of which is contradictory and incomplete, to establish a triable issue of fact, it may well be impossible for the court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 86 (2d Cir. 2019) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)). At the same time, however, as the Second Circuit recently reiterated, a plaintiff's testimony, standing alone, may be independently sufficient to raise a genuine issue of material facts. *See Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 49 (2d Cir. 2025). While credibility assessments are typically the province of the jury, "a party's affidavit may not create an issue of fact by 'contradict[ing] the affiant's previous deposition testimony.'" *Maxwell v. City of New York*, 380 F.3d 106, 109 (2d Cir. 2004) (emphasis in original) (quoting *Hayes v. New York City Dep't of Corrections,* 84 F.3d 614, 619 (2d Cir. 1996), *supplemented*, 108 F. App'x 10 (2d Cir. 2004)). Nor can a party rely on their "testimony to raise a genuine issue of fact" if "that testimony is inescapably and unequivocally contradicted by [his] own sworn and written statements" and where he "offers no plausible explanation for the multitude of contradictions." *Bentley*, 935 F.3d at 88; *see also Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998). However, the threshold for a Court to disregard a Plaintiff's testimony is quite high: the Court must find the record contradictions "inescapable and unequivocal" to find that her testimony raised only "a sham issue of fact." *Fosamax Prods. Liability Litig.*, 707 F.3d 189, 194 (2d Cir. 2013).

## DISCUSSION

Defendants move for Summary Judgment at to both of Plaintiff's retaliation claims under the NYLL. Because Defendants provided a legitimate justification for Plaintiff's firing, Plaintiff has the burden to establish that such justification was pretextual. The Court concludes that there

is no genuine dispute of fact that Defendants' stated reasons for Plaintiff's termination—Plaintiff's failure to adequately report the sexual assault of M.F. and her other inappropriate conduct—were legitimate and not pretextual.  Accordingly, Defendants' Motion is **GRANTED**.

### I.        Legal Standard

NYLL 740 prohibits employers from taking retaliatory action against an employee "because the employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety." *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 275 (S.D.N.Y. 2025) (citing NYLL § 740(2)(a)).  NYLL 741 prohibits employers from taking retaliatory action against an employee "because the employee . . . discloses or threatens to disclose to a supervisor . . . an activity, policy or practice of the employer or agent that the employee in good faith, reasonably believes constitutes improper quality of patient care or improper quality of workplace safety." NYLL § 741(2)(a).

Retaliation claims brought under the NYLL are subject to the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also McSweeney*, 776 F. Supp. 3d at 277 ("[I]dentical claims may be brought under the NYLL and NYSHRL).  Under that analysis, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-[retaliatory] reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

For a prima facie case of retaliation, a plaintiff must show, "that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse

employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). "[T]he adverse action must be taken *because* the employee engaged in protected activity. . .the whistleblower statute, like the anti-discrimination laws, requires some causal connection between an adverse personnel action and a report of dangerous activity." *Varughese v. Mount Sinai Med. Ctr.*, No. 12 Civ. 8812, 2015 WL 1499618, at *68 (S.D.N.Y. Mar. 27, 2015), *aff'd,* 693 F. App'x 41 (2d Cir. 2017) (emphasis added).

Once a plaintiff has established a prima facie showing of retaliation, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011). If the employer articulates a non-retaliatory reason for the adverse employment action, the plaintiff must then show that the defendant's proffered non-retaliatory reason is mere pretext. *Id.*

## II.    Merits

### A. Prima Facie Case

Based on the undisputed facts, the Court concludes that Plaintiff has met her burden for her prima facie case. As described, Plaintiff alleged that (1) she reported the sexual assault of M.F. to a supervisor, (2) her employer became aware of this report, (3) she was fired, and (4) a causal connection exists between the firing and her protected activity. The only element in dispute is causation. In making their prima facie case, a plaintiff can meet their burden to establish but-for causation by showing temporal proximity between their protected activity and the employer's adverse action. *Zann Kwan*, 737 F.3d at 845. Here, it is undisputed that Plaintiff was fired shortly after reporting the assault. For the purposes of surviving summary judgment, this temporal proximity is sufficient for Plaintiff to meet her "minimal" burden to establish causation for a prima

facie case of retaliation. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 111 (2d Cir. 2010) (four-month interval between complaint and termination was sufficient for a finding of causation).

### B. Legitimate, Non-Retaliatory Justification

Once a plaintiff has established a prima facie case of discrimination, the burden then shifts to the employer to "articulate[] a non-retaliatory reason for the employment action." *Zann Kwan*, 737 F.3d at 845. If the employer does so, then the burden shifts back to the plaintiff to show why that reason is mere pretext. *Id.*

Here, Defendants argue that Plaintiff was terminated because she failed to sufficiently report an allegation of sexual abuse of a resident, and for her other inappropriate conduct after the assault. Defs.' Mem. in Supp. of Mot. for Summary Judgment at 9, ECF No. 44. It is undisputed that Plaintiff told no one other than Charging Nurse Smothers about the assault, and Defendants point to several examples of Plaintiff's conduct that provide a basis for finding that Plaintiff inadequately reported what she saw, despite seeing Dr. Venerus continuing to work with patients after the incident. Such a failure to report an assault is indisputably a valid, non-retaliatory reason for terminating Plaintiff's employment. *See Luxenberg v. Guardian Life Ins. Co.*, No. 02 Civ. 9116, 2004 WL 385116, at *22 (S.D.N.Y. Feb. 27, 2004) ("[T]he court's role is to prevent unlawful [employment] practices, not to act as a superpersonnel department that second guesses employers' business judgments."). Plaintiff contends that she adequately discharged her responsibility to report the incident, based on her understanding that, as a CNA, her only reporting obligation was to tell the Charging Nurse about it; but even if that is a correct reflection of her own understanding, she does not dispute that the second step of company's Abuse Policy states to "[r]eport the incident to the Administrator and Director of Nursing," and there is nothing in the policy itself that excludes CNAs from this obligation. Pl.'s 56.1 Stmnt. ¶¶ 91, 94.

11

Further, Plaintiff's inappropriate conduct following the assault—all of which is undisputed—plainly provides an independent basis for Plaintiff's termination. That Plaintiff was "praise dancing" because "[Plaintiff] would not have to work anymore after her eyes seen [sic] what they seen [sic]" provides a sufficient basis for the employer to have concluded that Plaintiff planned to extort Cooperstown Center or Dr. Venerus to cover up the assault. Defs.' 56.1 Stmnt. ¶ 38. Plaintiff's decision to record—then hide—a conversation with M.F., *id.* ¶ 9-11, 37, provides a further basis for Defendants to have concluded that Plaintiff sought to create evidence that she could use to extract a hush money payment from her employer.

Accordingly, the burden shifts back to Plaintiff to show that Defendants' proffered reasons are pretextual.

### C. Pretext

A plaintiff may show that an employer's proffered non-retaliatory explanations are pretextual by "rely[ing] on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment." *Zann Kwan*, 737 F.3d at 847. Plaintiff does not meaningfully argue that her conduct was an invalid basis for termination; rather, she argues that it was not the real basis for her termination. She offers two forms of evidence in support of her contention that Defendants' explanation is pretextual: (1) purported inconsistent explanations for Plaintiff's firing and (2) alleged attempts by Lazar to get Plaintiff to change her story. The main source of this evidence is Plaintiff's uncorroborated deposition testimony, some of which constitutes inadmissible hearsay and other parts which contradict prior written statements from Plaintiff. The Court concludes that Plaintiff's testimony raises only "a sham issue of fact," and is insufficient to withstand summary judgment. *Fosamax Prods. Liability Litig.*, 707 F.3d 189, 194 (2d Cir. 2013).

Plaintiff first argues that evidence in the record is inconsistent with the notion that she was fired for her failure to report. She first claims that she was told that she was fired at the "directive" of DOH. Pls. Mem. of Law in Opp. to Summary Judgment ("Opp. Br.") at 12, ECF No. 47. However, the only evidence of this claim is inadmissible hearsay, on which the Court cannot rely on summary judgment. *See Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 409 (S.D.N.Y. 2015), *aff'd sub nom*, *Abdel-Karim v. Egyptair Holding Co.,* 649 F. App'x 5 (2d Cir. 2016). As far as admissible evidence, Plaintiff points to three reports that Defendants submitted to DOH which place the blame on Smothers and the other nurses, and which do not fault Plaintiff for her failure to report the assault up the chain; she argues that the reports demonstrate that her failure to report had nothing to do with her firing. *See* Opp. Br. at 12. But the "absence of evidence is not evidence of absence." *In re Bystolic Antitrust Litig.*, 657 F. Supp. 3d 337, 355 (S.D.N.Y. 2023), *aff'd sub nom. Watson Lab'ys, Inc.*, 101 F.4th 223 (2d Cir. 2024); *see also Saccenti v. Target Corp.*, No. 20 Civ. 4098, 2021 WL 2716644, at *2 (E.D.N.Y. July 1, 2021) (same); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (explaining that, although party seeking summary judgment has the initial burden of establishing the lack of a genuine dispute of material fact, that burden is satisfied by pointing to the absence of evidence supporting the non-moving party's case, and the non-moving party must then make a sufficient showing to establish the existence of all elements essential to their case on which they will bear the burden of proof at trial). The simple fact that Plaintiff was not singled out in Defendants' reports to DOH does not constitute evidence that Defendants did *not* believe that her conduct was a valid reason for termination. And in the face of undisputed evidence that she engaged in improper conduct that formed a valid basis for termination, it cannot create a genuine dispute of facts as to pretext.

That leaves Plaintiff's deposition testimony that Lazar tried to convince her to change her story during their meeting on February 27. Plaintiff claims Lazar initially told Plaintiff she was a

"protected witness," that her "job is secure," and they needed her to "cooperate." Pl.'s 56.1 Stmnt. ¶132. She claims he did so to dupe her into implicating herself. Opp. Br. at 13. She also claims Lazar "turned away the union representative" and forbade him from being at the meeting. Pl.'s 56.1 Stmnt. ¶ 133. Plaintiff also testified that, during the meeting with Lazar, she believed that he was "changing and twisting what [Plaintiff] was trying to tell him." *Id.* ¶ 134. She further stated that Lazar got "upset" because Plaintiff was "consistently telling him that what [she] saw [was] really abuse, and he was trying to make it look like it wasn't." *Id.* Plaintiff also testified that Lazar was trying to suggest to Plaintiff that Dr. Venerus' pants were "maybe too big on him and they were just falling off of him" and that Plaintiff's unwillingness to change her story made Lazar "agitated." *Id.*

But Plaintiff's self-serving deposition testimony—contradicted by her own other statements and unsupported by anything else in the record—is not a sufficient basis to create a *genuine* dispute of fact as to pretext. To begin, Plaintiff's deposition testimony is contradicted by her statements in an email indicating her own understanding that she was fired because she "did not escalate the matter to the higher up seeing the charge nurse had not reported the matter to [Cooperstown Center]" and because she was "seen dancing and celebrating saying [she] would never have to work again." Windholz Aff. Ex. I, ECF No. 43-9; see also *id.* Ex. A at 53:8-16. As for her testimony that her union representative was excluded from her meeting with Lazar, Plaintiff indicated in a written statement that she told Human Resources that she did not need a Union representative at the meeting. *Compare* Windholz Reply Aff., Ex. K at P00044, ECF No. 50 *with* Pl.'s 56.1 Stmnt. ¶ 133. She does not suggest that this written statement was false, or that it was procured fraudulently or under duress. Defendants also note that Plaintiff's contention that Lazar attempted to convince her to tell a false narrative to DOH is simply illogical: her meeting with Lazar occurred the day *after* Plaintiff had already spoken to DOH and law enforcement about the

14

assault, at which point trying to orchestrate a cover-up would be futile.  Defs.' Reply Mem. in Supp. of Mot. for Summary Judgment at 9, ECF No. 52.[3]

Viewing the record as a whole, the Court simply cannot conclude that there is a genuine dispute of fact as to pretext.  Plaintiff's deposition testimony is the only evidentiary basis she offers on this point; it is flatly contradicted by her own other statements, and Plaintiff offers no explanation for these contradictions.  *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88 (2d Cir. 2019) (noting that a plaintiff's testimony is insufficient to create a genuine dispute of fact when it "is inescapably and unequivocally contradicted by her own sworn and written statements" and where she "offers no plausible explanation for the multitude of contradictions").  Because Defendants consistently stated that Plaintiff was fired for her failure to report, and Plaintiff offers no valid evidence to dispute this reason as pretext, "no reasonable factfinder could conclude that retaliation was [Defendants'] true motive for firing her." *Sears-Barnett v. Syracuse Cmty. Health Ctr., Inc.*, 531 F. Supp. 3d 522, 545 (N.D.N.Y. 2021).

---

[3] Although the Court does not make credibility determination on summary judgment, it notes that there are substantial reasons to doubt Plaintiff's credibility, including her disturbing celebratory behavior after witnessing a sexual assault of someone under her care and her decision to record—then bury for months—a conversation with M.F. about what had happened.

## CONCLUSION

For the reasons discussed herein, Defendants' Motion for Summary Judgement is

**GRANTED**.

The Clerk of Court is respectfully directed to terminate ECF No. 41, and to close this case.

SO ORDERED.

Dated: February 17, 2026
New York, New York

 

DALE E. HO
United States District Judge

16